State ex rel. District Attorney vs. Guilbeau.

No. 1247.

THE STATE OF LOUISIANA EX. REL. C. H. MOUTON, DISTRICT AT-
TORNEY, VS. U. A. GUILBEAU ET ALS.

In the absence of legislation to that effect, tax collectors are not entitled to make deduc-
tions for charges and expenses incurred by them from the amounts realized by or
chargeable to them.

Mere delay in taking steps against a defaulting tax collector does not release his sureties
when no time or prolongation is allowed by the State herself, and by the delay their
rights to a subrogation is not impaired.

The law regulating the relations between the State, through her fiscal agents, and the gath-
erers of her revenues, is one of extreme rigidity which must be strictly enforced. Under
them and under the contract evidenced by the official board the accounts have to be
promptly and faithfully rendered at the appointed time and in the proper manner;
otherwise the principal becomes a defaulter, and his sureties are liable with and for him
in the mode and to the extent stipulated.

APPEAL from the Twenty-first District Court, Parish of Iberia.
Gates, J.

C. H. Mouton, Relator, District Attorney.

Felix Voorhies and Mouton & Martin for Defendants and Appellants.

The opinion of the Court was delivered by

BERMUDEZ, C. J. This is a suit against a sheriff as defaulting tax
collector, and against his sureties.

The defense by the defaulter's legal representatives, he having died,
is to the effect that he is entitled to be credited, 1st, with amounts due
him by the State for necessary expenses and costs incurred by him in
the collection of taxes; 2d, with a diminution on the amount carried
on the rolls for double and erroneous assessments and for amounts due
by delinquents; and, 3d, with amounts paid by him in the treasury
and not accounted for by the auditor.

The sureties plead further, that they were discharged by the derelic-
tion of the government, in consequence of whose laches their rights of
subrogation to those of the State have been destroyed.

From an adverse judgment the defendants have appealed.

They complain here that they were illegally deprived, by the ruling
of the district judge, of the right of establishing the credits averred on
behalf of Guilbeau, the alleged defaulter.

The bill taken to the action of the judge excluding the proof offered,
shows that it was proposed to introduce in evidence an account for
publication of delinquent tax sales in 1880, 1881 and 1882 due the Ob-
server, a newspaper published under that name; a receipt of the clerk

State ex rel. District Attorney vs. Guilbeau.

of court for amount paid by Guilbeau for recording sales of property adjudicated to the State; a receipt of the *Observer* for publication of tax sales in 1883; two checks on a bank to the order of the State treasurer.

The evidence was ruled out " on the ground that compensation cannot be pleaded by a tax collector when sued for taxes collected by or chargeable to him. This would be practically to allow him to sue the State. The proper place to settle this was the auditor's office."

It is urged that the relations existing between the State and a tax collector must be assimilated to those of principal and agent, and that, in the absence of adverse legislation, recourse must be had to the general provisions of the law on the subject of mandate.

There can be no question as to the correctness of the proposition, but the law touching this matter does not authorize the agent to make any deductions. He is one and the same person with the principal. He must pay over what he has collected, and then claim *reimbursement* of the charges and expenses necessarily incurred by him in the execution of his mandate.

The law on the subject, R. C. C. 3023, distinctly provides, as a rule, that the principal ought to *reimburse* the expenses and charges which the agent has incurred in the execution of his mandate, and pay his commission when one has been stipulated. The agent has a right to *retain* the same only when they are admitted or where they should clearly have been allowed. This is not such a case.

The district judge well says, however:

" The mode of ascertaining the indebtedness of a tax collector is very simple. He is charged with the sum total of the assessment rolls and blank licenses, and it is his duty to offset these by vouchers of payments to the State—delinquent lists, sales of property made for non-payment of taxes and adjudicated to the State, and such blank licenses as he may not have issued.

" The revenue laws of the State fix the dates at which his settlements shall be made, and if he fails to comply with those laws all presumptions are against him. * * * The State demands prompt payment of its dues, or a clean showing of the reasons why not."

It may well be, and it is no doubt the case, that, in adjusting their accounts with the State, tax collectors are allowed to retain all just amounts to which they might be otherwise entitled; but where they have not been permitted to make such deductions they cannot look for relief to the judiciary, but must address themselves to another branch

of the government, which alone controls the funds in the treasury in the absence of special legislation.

It is upon this principle that in a similar case, recently decided at Monroe, (State vs. Bradly) this court held that a sheriff and ex-officio tax collector is not entitled to deduct from amounts due the State for taxes and licenses collected by him the cost of deeds and copies charged to the State in cases of purchases of land sold for taxes and adjudicated to the State.

The district judge was therefore right in excluding evidence to show cost of publication of tax sales.

In justification of his refusal to admit the two checks in favor of the State treasurer, he says, in his reasons for judgment, that the amount of both had been placed to the credit of the collector in the auditor's and treasurer's statements. This saying is verified by the record. Such being the case, his exclusion of the checks, if erroneous, has worked no injury. The checks might have been admitted, the objection to them going to the effect and not to the admissibility.

## ON THE MERITS.

The case of the State is made out, not only by proof, but also by the special defense setting up title to further credits.

There is no evidence establishing that the defaulting tax collector is entitled to any credit. The district judge, in his elaborate opinion, so finds and declares; so do we.

The defense of the sureties is, after all, simply, that, by the failure of the auditor and of the Governor to report Guilbeau as a defaulter to the General Assembly, and to publish him to the world as such, they have been deprived of their right of subrogation to the rights of the State in case of payment, and are thereby discharged from all liability on their bond.

It is true that the Code provides (R. C. C., 3063) that the prolongation of the terms granted to the principal debtors, without the consent of the surety, operates the discharge of the latter; but there is nothing in the record to show that the State has ever granted to Guilbeau any prolongation whatever. It is not even pretended that the custodians of the fisc have arrogated to themselves such power which the sovereign alone could have exercised. State vs. Lanier, 31 Ann. 423.

In case of the Police Jury vs. Brookshier, tax collector, 31 Ann. 738, which was a synonymous case, the sureties having claimed a release because of an alleged delay in enforcing settlement, the court said:

State ex rel. District Attorney vs. Guilbeau.

"Their complaint is that the plaintiff was so dilatory in commencing proceedings as to imperil their safety. * * * It is not shown, nor even pretended, that whatever delay there was instituting proceedings either impaired or destroyed their right of subrogation or any other right. The right of subrogation is, indeed, the only one that could be impaired by delay, and it was not affected in any manner by tardiness in instituting this proceeding. The surety is discharged when he loses his right of subrogation. The mere delay to sue does not of itself produce that effect." See Andrus vs. State, 4 La., 407, and Barnes vs. Crandell, XI Ann. 119.

The defendants contend that, although they did not seasonably establish in the auditor's department that Guilbeau was entitled to a credit for the difference between certain taxes, and the price realized by the property liable therefor, and which sold for less, still they should be credited therewith.

The only answer to this is that the law regulating the relations of the State with the gatherers of her revenues is one of extreme rigidity which must be strictly enforced, and that under them, and even under the terms of the contract evidenced by the bond signed by the collector and his sureties, the accounts have to be promptly and faithfully rendered at the required time and in the proper manner, otherwise the principal defaulter and his sureties become liable for his defections with and for him in the mode and to the extent stipulated.

The court can pass upon such questions only as may present an erroneous exercise of discretion or judgment on the part of the auditor and treasurer as custodians of public moneys.

In this instance they are not shown to have acted in an authorized manner.

The appellee claims that, in the judgment of the lower court, two of the defendants have been misnamed, and that the errors should be corrected. There can be no objection to that relief.

It is therefore ordered and decreed that the judgment appealed from be amended by striking from the names of Jean Olivier Bouvier the first name *Jean* and substituting thereto the name *Jacques*, and from the name of Jules G. Guidry the letter G. and substituting thereto the letter J., and that thus amended said judgment be affirmed with costs.